UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAY F. VERMILLION, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:16-cv-01723-JMS-MPB |
| CORIZON HEALTH INC., DR. PAUL A. TALBOT, RUBY BEENY LPN, | ) ) ) ) |
| Defendants. | ) |

**Entry Discussing Motion for Preliminary Injunction**

Plaintiff Jay Vermillion brought this action pursuant to 42 U.S.C. § 1983 alleging that the defendants failed to treat him for his kidney stones and the pain associated with them. Vermillion has filed a motion for a preliminary injunction and the defendants were directed to respond to that motion. For the following reasons, the motion for a preliminary injunction, dkt. [23], is **denied**.

**I. Standard**

A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need. *Goodman v. Ill. Dep't of Fin. and Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). A party seeking a preliminary injunction must show (1) that its case has "some likelihood of success on the merits," and (2) that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011). If the moving party meets these threshold requirements, the district court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty

that the injunction should be denied." *Id.* The district court's weighing of the facts is not mathematical in nature; rather, it is "more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895–96 (7th Cir. 2001) (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 12 (7th Cir. 1992))

## II. Facts

Vermillion's claims in this case are based on medical care he has received for his urinary tract problems. Vermillion alleges that he has experienced severe pain in his abdomen, blood in his urine, and the passage of a kidney stone. He alleges that he has not received adequate treatment for these conditions. He seeks an order directing that he be seen by an outside urologist.[1]

*The Parties*

During all times relevant to his Complaint, Vermillion was a 57 year-old inmate incarcerated at the Pendleton Correctional Facility ("Pendleton"). He has a history of an enlarged prostrate that is controlled by Flomax and Aspirin for pain.

Defendant Corizon is a medical service provider who, at all times relevant to the Complaint, provided medical services for the Indiana Department of Correction ("IDOC"), including Pendleton.

---

[1] Vermillion's initial motion for a preliminary injunction also described a colonoscopy and appeared to be based at least in part on concerns Vermillion had regarding treatment for gastrointestinal conditions or treatment that was otherwise not related to the claims in the complaint. Vermillion was therefore directed to clarify the basis of his request for injunctive relief and he has done so, explaining his contention that he has not received adequate care for his urinary tract conditions.

2

Defendant Dr. Talbot is a licensed general practitioner who, at all times relevant to the Complaint, was a physician providing medical services to inmates at Pendleton. Dr. Talbot saw inmates as they were placed on his schedule for a variety of medical conditions, including urinary tract infections and kidney stones.

Defendant Nurse Beeny is a licensed practical nurse who, at all times relevant to the Complaint, was a nurse providing medical services to inmates at Pendleton. As a licensed practical nurse, Nurse Beeny did not prescribe medication for patients. Licensed practical nurses also did not diagnose or make treatment plans or decisions; these decisions must be made by the doctor or nurse practitioner. A licensed practical nurse triages or assesses a patient and follows the doctor's orders and treatment plan.

*Treatment for Vermillion's Enlarged Prostate and Urinary Tract Issues*

At the times relevant to the complaint, Vermillion was enrolled in the Chronic Care Clinic for his history of hypertension, diabetes, hyperlipidemia and enlarged prostate. Common symptoms of an enlarged prostate include inability to urinate, urinary tract infection, blood in the urine, and pelvic pressure. These symptoms are similar to the symptoms caused by urinary tract infections ("UTI") or kidney stones. As an inmate enrolled in the Chronic Care Clinic, Vermillion is seen by a provider every 90 days and undergoes routine testing for his chronic conditions, including his enlarged prostate. Medical staff monitored Vermillion's enlarged prostate through monthly appointments and symptomatic treatment for his pain complaints. He was routinely prescribed Flomax for urinary issues and Aspirin for associated pain.

*Vermillion's Treatment in April 2016*

On April 8, 2016, Vermillion submitted a healthcare request form complaining that "my urine was blood red at 5:00 a.m. and by 8:00 a.m. it was dark as coffee." Vermillion told medical staff he had a sample to submit. That same day, Nurse Beeny examined Vermillion in nursing sick call. Vermillion told Nurse Beeny he had been peeing blood since March 17, 2016. Vermillion showed Nurse Beeny two Tylenol bottles full of what he claimed was his urine. This was the first time Vermillion had notified medical staff of these complaints. He had normal vital signs. Nurse Beeny had Vermillion provide a sterile sample and performed a urine dipstick test to further evaluate his condition. The results were positive for white blood cells in Vermillion's urine, indicating a UTI. Nurse Beeny notified the staffing physician, Dr. Talbot, of the urine dipstick results and requested orders due to Vermillion's signs and symptoms of a UTI. Dr. Talbot ordered additional urine and blood testing to further evaluate Vermillion's condition. These included a urinalysis to test for urinary issues; testing for Gonorrhea and Chlamydia; a prostate-specific antigen ("PSA") test for prostate function; a complete blood count ("CBC") to evaluate overall health including potential infection, anemia, etc.; and a comprehensive metabolic panel ("CMP") to investigate overall organ function and conditions such as diabetes or liver or kidney disease. Dr. Talbot also prescribed Bactrim (an antibiotic) for the UTI.

A UTI is an infection in any part of a patient's urinary system, kidneys, ureters, bladder and urethra. UTIs are caused by bacteria, most commonly E. coli, that enters the urinary system. Common symptoms of UTIs include, among other symptoms, pelvic or abdominal pain, cloudy urine, and blood in the urine. UTIs cause inflammation and it is not uncommon for them to cause bleeding and discolored urine. The proper treatment for a UTI is antibiotics.

Kidney stones are caused by the crystallization of minerals, which occurs when there is not enough urine or when levels of salt-forming crystals are present. Kidney stones may be caused by many different things, including calcium oxalate, uric acid, cysteine, or xanthine. Common symptoms of kidney stones include severe abdominal pain that comes in waves and fluctuates in intensity, pain in urination, pink, red or brown blood in urine, nausea and vomiting, persistent need to urinate, needing to urinate more frequently than usual, fever and chills, and urination in small amounts only. The standard treatment and care for a patient passing a kidney stone is hydration and anti-inflammatory medications, such as Advil of Aleve, to reduce inflammation, pain, and permit the kidney stones to pass in its own course.

On April 12, 2016, the lab results from Vermillion's urine culture revealed abnormal levels of E. coli bacteria in his urine. E. coli is the most common form of bacteria that causes a UTI and a level above 10,000 cfu/ml indicates a UTI. Vermillion's urine culture revealed a bacteria level of 50,000 to 100,000 cfu/ml, also supporting a UTI diagnosis. Vermillion's blood work further revealed that he did not have an acute kidney stone issue or other complication with his kidney, liver, or prostate. Vermillion's blood work was unremarkable, except for high glucose (diabetes) and triglyceride (cholesterol) levels. Vermillion did not have excess chemicals in his blood that contribute to the formation of stones, such as calcium or uric acid. Further, Vermillion's CBC and urinalysis did not indicate that he had an infection or excess white blood cells, or crystals which are also indications of kidney stones. Finally, Vermillion's PSA was normal, revealing that he had a normal functioning prostate.

That same day, Dr. Talbot examined Vermillion in a follow-up appointment in the Chronic Care Clinic. Vermillion's urine had cleared up and he did not present with blood in his

urine. Vermillion also did not complain of difficulty urinating or pain. Objectively, Dr. Talbot determined that Vermillion's clinical presentation and the lab results revealed a UTI that was timely treated and had resolved. Vermillion's enlarged prostate was mild and improving with Flomax. Vermillion reported to Dr. Talbot that he believed he had passed a kidney stone. Dr. Talbot told Vermillion that his testing was negative for kidney stones and he did not present with an acute kidney stone issue. Although Dr. Talbot had seen no evidence of a kidney stone, he advised Vermillion to return to the medical unit for further care if his symptoms re-occurred. Dr. Talbot also re-filled Vermillion's Aspirin and Flomax prescriptions through October 2016.

On April 14, 2016, Vermillion submitted two healthcare request forms stating that on April 8, 2016, Nurse Beeny took a urine sample that tested positive for blood but that on April 12, 2016, Dr. Talbot told him that he could not provide treatment because Nurse Beeny failed to preserve that evidence. Vermillion also complained that Dr. Talbot failed to provide any treatment for his prostate/bladder and three hours later he was passing more blood and a giant kidney stone. Medical staff responded that Vermillion's urine dip stick results did show blood as a result of a UTI and those results were documented. In addition, the objective testing did not support that Vermillion had a kidney stone, such as excess chemicals of abnormal kidney, liver or prostate levels in his blood work. Vermillion had seen Dr. Talbot for his complaints and was diagnosed with a UTI based on his presentation and the objective data.

On June 15, 2016, repeat lab testing was performed as a routine matter of course for Vermillion's chronic condition. The urinalysis was normal with no bacteria or leukocyte, indicating that Vermillion's UTI resolved completely and Vermillion had no other urological issues.

Dr. Jeremy Fisk, a Board Certified Family Practice physician with experience treating patients with urinary tract infections and kidney stones, reviewed Vermillion's medical records and opined that, while Vermillion had some symptoms that he could misconstrue with a kidney stone, the combination of his symptoms and laboratory findings were highly consistent with a UTI. He also opined that Vermillion was appropriately evaluated, correctly diagnosed with a UTI, and treated appropriately and in a timely fashion by medical staff during his incarceration.

*Vermillion's Recent Care*

On June 20, 2016, Vermillion again experienced abdominal pain and submitted a health care request form. On June 26, 2016, Vermillion requested to see a provider for his prostate problems. Nursing staff examined him and he was stable with normal vital signs. He reported pelvic pressure and believed his prostate was swollen again. Vermillion did not have pain or burning with urination on Flomax. A urine dip stick test was negative. On June 28, 2016, Dr. Talbot examined Vermillion for his complaints and noted that his enlarged prostate condition was improving and well-controlled on Flomax. Vermillion reported suprapubic pain that was relieved upon urination or bowel movements. Dr. Talbot's examination revealed a normal bladder and no tenderness to Vermillion's abdomen or pelvic area. Dr. Talbot ordered additional lab testing and continued Vermillion's Flomax and Aspirin prescriptions.

On August 19, 2016, Dr. Talbot examined Vermillion after he complained of bloody stool. Vermillion first reported that he occasionally saw blood in his stool, but then corrected himself and reported that the last time he saw blood in his stool was after his 2011 colonoscopy. His prior colonoscopy revealed a history of polyps. He denied external hemorrhoids. Dr. Talbot's

physical exam was normal and he diagnosed Vermillion with potential internal hemorrhoids and ordered further testing.

On October 24, 2016, Vermillion was seen in a Chronic Care Clinic appointment and reported that his enlarged prostate was improving. Vermillion stated that he was able to start and stop his stream. His physical exam was normal and he had no complaints. The medical provider ordered Vermillion to continue on his current medications. The medical provider also ordered an off-site consult for a follow-up colonoscopy.

On December 13, 2016, Vermillion went off-site for a colonoscopy with a specialist. The colonoscopy revealed polyps and hemorrhoids that were excised during the procedure. The colonoscopy results did not reveal cancer or pre-cancerous lesions. The specialist performing the colonoscopy, Dr. Nisi, ordered a repeat colonoscopy in five years. No further care was recommended.

On January 26, 2017, Dr. Talbot saw Vermillion in a Chronic Care Clinic visit. Vermillion reported for the first time that his Flomax had not worked for more than year. Dr. Talbot noted that Vermillion's reporting conflicted his prior statement to providers that Flomax controlled his urination. Dr. Talbot counseled Vermillion about his colonoscopy results and hemorrhoid/polyp removal. Dr. Talbot ordered further testing to evaluate Vermillion's condition, which were again negative for kidney, bladder, or prostate issues.

### III. Discussion

As previously mentioned succeed in obtaining preliminary injunctive relief, Vermillion must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm if preliminary relief is not granted, that the balance of equities tips in his favor, and that it

is in the public interest to issue an injunction. *United States v. NCR Corp.,* 688 F.3d 833, 837 (7th Cir. 2012). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). The movant bears the burden of proving his entitlement to such relief. *Cooper v. Salazar,* 196 F.3d 809, 813 (7th Cir. 1999).

A. *Likelihood of Success on the Merits*

The defendants argue that Vermillion has not shown that he is reasonably likely to succeed on the merits of his claim. The underlying claim in this action is that the defendants have exhibited deliberate indifference in violation of the Eighth Amendment to his urinary tract issues. Specifically, Vermillion alleges that in the Spring of 2016, he experienced pelvic pain, blood in his urine, and a kidney stone. To prevail on his Eighth Amendment deliberate indifference medical claim, Vermillion must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about his condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). The individual defendants and Corizon each argue that Vermillion does not have a reasonable likelihood of success on the merits of these claims. For the reasons discussed below, the Court agrees.

1. <u>Claims against the Individual Defendants</u>

The defendants do not argue that Vermillion did not suffer from an objectively serious medical condition, but they do argue that there is no evidence that they were deliberately indifferent to it. "[C]onduct is 'deliberately indifferent' when the official has acted in an

is in the public interest to issue an injunction. *United States v. NCR Corp.,* 688 F.3d 833, 837 (7th Cir. 2012). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). The movant bears the burden of proving his entitlement to such relief. *Cooper v. Salazar,* 196 F.3d 809, 813 (7th Cir. 1999).

A. *Likelihood of Success on the Merits*

The defendants argue that Vermillion has not shown that he is reasonably likely to succeed on the merits of his claim. The underlying claim in this action is that the defendants have exhibited deliberate indifference in violation of the Eighth Amendment to his urinary tract issues. Specifically, Vermillion alleges that in the Spring of 2016, he experienced pelvic pain, blood in his urine, and a kidney stone. To prevail on his Eighth Amendment deliberate indifference medical claim, Vermillion must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about his condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). The individual defendants and Corizon each argue that Vermillion does not have a reasonable likelihood of success on the merits of these claims. For the reasons discussed below, the Court agrees.

1. <u>Claims against the Individual Defendants</u>

The defendants do not argue that Vermillion did not suffer from an objectively serious medical condition, but they do argue that there is no evidence that they were deliberately indifferent to it. "[C]onduct is 'deliberately indifferent' when the official has acted in an

intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). *See Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

The defendants argue that Vermillion cannot show that they were deliberately indifferent to his need for medical care because he experienced a common UTI that was treated appropriately. The evidence here is that Nurse Beeny responded to Vermilion's complaints and performed a physical examination and urine test. She determined that Vermillion's symptoms and test results indicated a UTI. Nurse Beeny then contacted Dr. Talbot for orders. Dr. Talbot ordered urine and blood work to rule out other conditions and antibiotic medication to treat the UTI. To the extent that Vermillion asserts that he suffered from a kidney stone, Dr. Fisk has opined that he was appropriately diagnosed with and treated for a UTI. Vermillion's

disagreement with this conclusion is not enough to show deliberate indifference. *See Pyles*, 771 F.3d at 409. Further, the evidence presently before the Court also shows that Vermillion has continued to receive care for his chronic and acute conditions. He receives medication for his enlarged prostate and had received further testing which has indicated no ongoing issues.

### 2. Claims against Corizon

The defendants also argue that Vermillion does not a have a reasonable likelihood of success on the merits on his claim that Corizon had a policy which resulted in the alleged deliberate indifference to his medical needs. *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), stands for the proposition that municipalities are not vicariously liable for the constitutional violations of their employees under § 1983 unless those acts were carried out pursuant to an official custom or policy. *Id.* at 694. Private corporations acting under color of state law are treated as municipalities for purposes of § 1983. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n. 6 (7th Cir. 2002). To succeed on a *Monell* claim, a plaintiff must show that the municipal policy or custom was the "direct cause" or "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694; *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). The Court has already concluded that Vermillion has failed to show a reasonable likelihood of the success on the merits of his claims against the individual defendants. For this reason alone, Vermillion has no reasonable likelihood of success on his *Monell* claim against Corizon. Further, Vermillion has presented no evidence, outside of his own conclusions, that the alleged wrongful acts of the individual defendants were the result of a Corizon policy.[2]

---

[2] The Court also notes that Corizon is no longer the contracted health care provider for the IDOC.

B. *Irreparable Harm, Balance of Harms, and Public Interest*

The defendants further argue that Vermillion has not shown that he will experience irreparable harm if his requested injunctive relief is not granted, that the balance of harms weighs in his favor, or that the requested relief would be in the public interest. "Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for.... [T]he injury must be of a particular nature, so that compensation in money cannot atone for it." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997). While Vermillion describes his condition as "life-threatening" he has come forward with no evidence to support this conclusion. There is thus no evidence that Vermillion will experience an injury that cannot be repaired. The record shows that Vermillion has been given, and continues to receive, adequate care for his urinary and pain complaints, including examinations, testing, and medication. For the same reason, he has not established that the balance of the equities favors him. Finally, Vermillion also has not shown that the relief he seeks would serve the public interest. Courts have held that prison administrators "must be accorded wide-ranging deference in the . . . execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Pardo v. Hosier*, 946 F.2d 1278, 1280-81 (7th Cir. 1991) (internal quotations omitted).

## IV. Conclusion

For the foregoing reasons, Vermillion's motion for a preliminary injunction, dkt. [23] must be **denied**.

**IT IS SO ORDERED.**

Date: 7/13/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JAY F. VERMILLION
973683
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Adriana Katzen
BLEEKE DILLON CRANDALL, PC
adriana@bleekedilloncrandall.com