# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JAY F. VERMILLION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16-cv-01723-JMS-DLP |
| | ) |
| CORIZON HEALTH INC., DR. PAUL A. TALBOT, RUBY BEENY LPN, | ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Jay Vermillion, an inmate at the Pendleton Correctional Facility, brought this action pursuant to 42 U.S.C. § 1983 alleging that the defendants failed to treat him for his kidney stones and the pain associated with them. The defendants have moved for summary judgment and Mr. Vermillion has responded. For the following reasons, the motion for summary judgment, dkt. [68], is **granted**.

**I. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue

may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II. Facts

The following statement of facts has been evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Vermillion as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

A. *The Parties*

During all times relevant to his Complaint, Mr. Vermillion was a 57-year-old inmate incarcerated at the Pendleton Correctional Facility ("Pendleton"). Mr. Vermillion had a history of benign prostatic hyperplasia (an enlarged prostate) that was well controlled on Flomax and Aspirin for associated pain. Common signs and symptoms of an enlarged prostate include inability to urinate, urinary tract infection, blood in the urine, and pelvic pain. These symptoms are similar to the symptoms caused by urinary tract infections ("UTI") or kidney stones.

Defendant Corizon is a medical service provider who, at all times relevant to Mr. Vermillion's Complaint, provided medical services for the Indiana Department of Correction ("IDOC"), including Pendleton.

Defendant Dr. Talbot is a licensed general practitioner who, at all times relevant to the Complaint, was a physician providing medical services to inmates at the Pendleton Correctional Facility. Dr. Talbot saw inmates as they were placed on his schedule for a variety of medical conditions, including urinary tract infections and kidney stones.

Defendant Nurse Beeny is a licensed practical nurse who, at all times relevant to the Complaint, was a nurse providing medical services to inmates at Pendleton. As a licensed practical nurse, Nurse Beeny did not prescribe medication for patients. Licensed practical nurses also did not diagnose or make treatment plans or decisions; these decisions must be made by the doctor or nurse practitioner. A licensed practical nurse triaged or assessed a patient and followed the doctor's orders and treatment plan.

B. *Background of Mr. Vermillion's Treatment*

Mr. Vermillion was enrolled in the Chronic Care Clinic at Pendleton for his history of hypertension, diabetes, hyperlipidemia and enlarged prostate. As an offender enrolled in the Chronic Care Clinic, Mr. Vermillion is seen by a provider every 90 days and undergoes routine testing for his chronic conditions, including his enlarged prostate. Medical staff monitored Mr. Vermillion's enlarged prostate through monthly appointments and symptomatic treatment for his pain complaints. Mr. Vermillion was routinely prescribed Flomax for urinary issues and Aspirin.

C. *Kidney Stones*

Mr. Vermillion alleges that the defendants failed to treat his kidney stones. Kidney stones are caused by the crystallization of minerals, which occurs when there is not enough urine or when levels of salt-forming crystals are present. Common symptoms of kidney stones include severe abdominal pain that comes in waves and fluctuates in intensity, pain in urination, pink,

3

red or brown blood in urine, nausea and vomiting, persistent need to urinate, urinating more frequently than usual, fever and chills, and urination in small amounts only. The standard treatment and care for a patient passing a kidney stone is hydration and anti-inflammatory medications, such as Advil or Aleve, to reduce inflammation, pain, and permit the kidney stones to pass in its own course.

D. *Mr. Vermillion's Treatment on April 8, 2016*

On April 8, 2016, Mr. Vermillion began to pass blood while urinating. That same day, Nurse Beeny examined him in nursing sick call. He told Nurse Beeny he had been peeing blood since March 17, 2016. He showed Nurse Beeny two Tylenol bottles full of what he claimed was his urine. He complained of some abdominal discomfort. He had normal vital signs. Nurse Beeny performed a urine dipstick test to further evaluate his condition. The results were positive for white blood cells in Mr. Vermillion's urine, indicating a urinary tract infection ("UTI"). Common symptoms of UTIs include, among other symptoms, pelvic or abdominal pain, cloudy urine, and blood in the urine. UTIs cause inflammation and it is not uncommon for them to cause bleeding and discolored urine. The proper treatment for a UTI is antibiotics. Nurse Beeny notified the staffing physician, Dr. Talbot, of the urine dipstick results and requested orders based on Mr. Vermillion's signs and symptoms of a UTI. Dr. Talbot ordered additional urine and blood testing to further evaluate Mr. Vermillion's condition. Dr. Talbot ordered a urinalysis to test for urinary issues; testing for gonorrhea and chlamydia; a prostate-specific antigen ("PSA") test for prostate function; a complete blood count ("CBC") to evaluate overall health including potential infection, anemia, etc.; and a comprehensive metabolic panel ("CMP") to investigate overall organ function and conditions such as diabetes or liver or kidney disease. Dr. Talbot also

prescribed Bactrim (an antibiotic) for Mr. Vermillion's indicated UTI. Nurse Beeny provided Mr. Vermillion with the antibiotic, and told him he would be "called out" to see the doctor in a week to ten days.

On April 12, 2016, the lab results from Mr. Vermillion's urine culture revealed abnormal levels of E. coli bacteria in his urine, indicating a UTI. Mr. Vermillion's blood work did not indicate that he had an acute kidney stone issue or other complication with his kidney, liver, or prostate. His blood work was unremarkable, except for high glucose (diabetes) and triglyceride (cholesterol) levels. Mr. Vermillion did not have excess chemicals in his blood that contribute to the formation of stones, such as calcium or uric acid. Further, his CBC and urinalysis did not indicate that he had an infection, excess white blood cells, or crystals which are also indications of kidney stones. Finally, his PSA was normal, revealing that he had a normal functioning prostate.

E. *April 12, 2016, Appointment with Dr. Talbot*

On April 12, 2016, Mr. Vermillion was seen by Dr. Talbot. Mr. Vermillion states that Dr. Talbot told him that the visit was for "Chronic Care."[1] Mr. Vermillion told him that he was not there for Chronic Care, but was there for a follow-up and/or treatment for his bloody urine and severe abdominal pains on April 8, 2016. Mr. Vermillion did not complain of blood in his urine or difficulty urinating that day. According to Mr. Vermillion, Dr. Talbot asked him to refresh his memory on the matter and began to search his computer for the result of the lab results, but said

---

[1] The defendants object to the admission of much of Mr. Vermillion's testimony regarding his April 12, 2016, interaction with Dr. Talbot, stating, among other things, that it contains expert opinion and calls for speculation, but Mr. Vermillion can testify about his recollection of his conversation with Dr. Talbot. His testimony regarding what was said at that time is not speculative nor does it provide expert opinion.

there were none. While there is a dispute of fact regarding whether Dr. Talbot had the April 12, 2016, lab results or not, there is no dispute regarding the fact that those results exist and reflected no abnormality that would indicate the presence of kidney stones. Further, Dr. Talbot told Mr. Vermillion to return to the medical unit for further care if his symptoms recurred.

Mr. Vermillion then tried to continue discussing with Dr. Talbot the severe pain in his lower pelvic region and blood in his urine. Mr. Vermillion suggested that his current problem might be a product of his ongoing kidney stones and/or prostate problems. Dr. Talbot told him that his testing was negative for kidney stones and that he should return to the medical unit if his symptoms recurred. Mr. Vermillion also asked for something to treat his pain, but Dr. Talbot dismissed him.[2]

F. *Passage of Believed Kidney Stones*

At about 5:00 p.m. on the evening of April 12, 2016, Mr. Vermillion's lower abdominal pain increased, becoming unbearable. He began to experience uncontrollable urination. He ran to the restroom and began to pass blood until the flow appeared to be obstructed. Mr. Vermillion then passed what he believes to be a kidney stone into a plastic cup.[3] Mr. Vermillion experienced severe pain while urinating and blood in his urine thereafter. He did not report this incident to Dr. Talbot or Nurse Beeny.

---

[2] There is an issue of fact regarding whether Mr. Vermillion told Dr. Talbot that he was in pain at the time. Dr. Talbot states that Mr. Vermillion did not complain of pain, while Mr. Vermillion states that he asked for something for his severe pain.

[3] The defendants object to Mr. Vermillion's characterization of this object as unqualified expert opinion. But Mr. Vermillion can testify that an object passed out of his urethra and that he believed it to be a kidney stone.

G. *Expert Opinion*

Dr. Jeremy Fisk is a Board Certified Family Practice physician with experience treating patients with urinary tract infections and kidney stones. Dr. Fisk reviewed Mr. Vermillion's medical records and opines that, while Mr. Vermillion had some symptoms that he could misconstrue as a kidney stone, the combination of his symptoms and laboratory findings were highly consistent with a UTI. Dr. Fisk opines that Mr. Vermillion was appropriately evaluated, correctly diagnosed with a UTI, and treated appropriately and in a timely fashion by medical staff.

## III. Discussion

Mr. Vermillion asserts that the defendants failed to provide him with adequate medical care for his kidney stones. Because he was a convicted inmate at all times relevant to his complaint, his treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The defendants argue that they did not violate Mr. Vermillion's Eighth Amendment rights.

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition

and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

The defendants do not contend for purposes of summary judgment that Mr. Vermillion's urinary tract issues were not serious. But they argue that they were not deliberately indifferent to his condition. "Conduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). *See Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

8

The defendants have presented evidence to show that they reasonably believed that Mr. Vermillion experienced a UTI on April 8, 2016, and treated him appropriately for it. Based on the urine testing, which indicated a UTI, and not kidney stones, and Mr. Vermillion's history of an enlarged prostate, the defendants were not deliberately indifferent in not concluding that he was experiencing kidney stones. Further, it was reasonable for Nurse Beeny to conclude that any pain Mr. Vermillion experienced when she treated him on April 8, 2016, was a result of the UTI and that treatment of the UTI would alleviate the associated pain. When Dr. Talbot saw Mr. Vermillion on April 12, 2016, Mr. Vermillion did not present with blood in his urine or difficulty urinating. Because he did not have those symptoms, Dr. Talbot reasonably advised Mr. Vermillion to return if those symptoms occurred again. While Mr. Vermillion states that he complained to Dr. Talbot of abdominal pain that day, an inmate does not have an Eighth Amendment right to be pain free after appropriate medical attention. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Based on his evaluation of Mr. Vermillion, including his recent UTI and history of an enlarged prostrate, it would be reasonable to conclude that, even though he had received appropriate treatment, some pain may be expected. The parties dispute whether Mr. Vermillion passed kidney stones during the evening of April 12, 2016. But even if Mr. Vermillion did pass kidney stones that night, this fact does not change the conclusion that, when they evaluated him, Nurse Beeny and Dr. Talbot reasonably believed that he had a UTI and properly treated him for that condition. In sum, Mr. Vermillion has not presented evidence to permit a conclusion that no reasonably competent professional would have performed as Nurse Beeny and Dr. Talbot performed in April of 2016. *See Pyles*, 771 F.3d at 409. Mr. Vermillion

has failed to show that they were deliberately indifferent to his serious medical needs and they are therefore entitled to summary judgment.

To the extent that Mr. Vermillion states that he started experiencing lower pelvic pain in June of 2015, but that Pendleton medical staff ignored his complaints for ten months, he has presented no evidence that either Nurse Beeny or Dr. Talbot participated in, or were aware of, this alleged denial of treatment. He therefore cannot show that they were deliberately indifferent to his need for treatment during that time period. *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (A defendant can only be liable for the actions or omissions in which he personally participated.).[4]

Because the Court has concluded that Nurse Beeny and Dr. Talbot were not deliberately indifferent to Mr. Vermillion's condition, he cannot maintain his policy claim against Corizon based on these same allegations. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007).

### IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [68], is **granted**. The motion for a color photograph, dkt. [97], and motion to conduct a hearing, dkt. [147], are **denied as moot**. Judgment consistent with this Entry shall now issue.

---

[4] Further, Mr. Vermillion complains of treatment he received after the alleged passage of the kidney stone, but this treatment is not the subject of this case, which is limited to Mr. Vermillion's complaints regarding the treatment he received from Dr. Talbot and Nurse Beeny for his believed kidney stones in April of 2016. *See* dkt. 1 (Complaint); dkt. 7 (Screening Entry); and dkt. 19 (Entry Denying Motion to Amend). In fact, Mr. Vermillion appears to be pursuing claims for acts that took place after he filed the complaint in this case in *Vermillion v. Corizon Health, Inc., et al.*, 1:17-cv-961-RLY-MPB.

**IT IS SO ORDERED.**

Date: 3/5/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JAY F. VERMILLION
973683
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Adriana Katzen
BLEEKE DILLON CRANDALL, PC
adriana@bleekedilloncrandall.com